SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
BRADLEY R. O'BRIEN
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105
Telephone: (415) 744-6484
E-mail:  brad.obrien@usdoj.gov

ALICIA A.G. LIMTIACO
United States Attorney
MIKEL SCHWAB
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagatna, Guam  96910
Tel:  (671) 472-7332
E-mail:  mikel.schwab@usdoj.gov

# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH UTILITIES CORPORATION, and the COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,<br><br>Defendants. | Case No. 08-cv-0051<br><br>**UNITED STATES' RESPONSE TO CUC'S MOTION TO CONSTRUE AND CLARIFY ORDER**<br><br>Judge:   Hon. David O. Carter<br><br>Hearing Date: TBD<br>Time:<br>Location: |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................- 1 -

II.     DISCUSSION ...................................................................- 4 -

    A.      The EEMC Order ...................................................- 4 -

        1.      EEMC Authority ...........................................- 4 -

        2.      Funding Obligations.......................................- 4 -

        3.      Potential EEMC Projects ................................- 5 -

        4.      Tank 102 ....................................................- 8 -

        5.      CUC Contracts .............................................- 9 -

III.    CONCLUSION..................................................................- 11 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.  INTRODUCTION

On December 8, 2014, the Commonwealth Utilities Corporation ("CUC") filed a motion ("CUC Motion") (Dkt No. 162-1) requesting the Court to determine by videoconference broad and conflicting CUC positions regarding the scope of the potential responsibilities of the Engineering and Environmental Management Company ("EEMC") established by the Court's September 26, 2014 Order ("EEMC Order").  Dkt No. 151.  As described below, CUC's filing is a result of CUC's procedural irregularities and lacks factual and legal support.

During a "meet and confer" telephone call held on December 4, 2014 PST, the United States pointedly objected to CUC using an informal email ("CUC email request") to the Court raising substantive issues regarding CUC's and the EEMC's obligations under Stipulated Order Number Two ("SO2") and the EEMC Order. Declaration of Bradley O'Brien ("O'Brien Dec.")[1] ¶¶ 5-6.  The United States admonished CUC for violating the Court's unambiguous direction forbidding CUC from continuing CUC's past practice of raising substantive issues with the Court through email exchanges.  *Id*. ¶ 3.  In addition to violating the Court's direction and standard legal practice, CUC's email request, since it is not in the form of a motion filed with the Court, shields its actions from public review.  During the December 4, 2014 PST telephone call, the United States made abundantly clear to CUC that CUC was fully aware that its informal email request violated the Court's direction, the Federal Rules of Civil Procedure and the Commonwealth of the Northern Mariana Islands ("CNMI") Local Rules (*e.g*., L.R. 1.5).[2]  *Id.* ¶¶ 5-6. Only after the United States strenuously objected to CUC's email request and rightly insisted that formal documents be filed in the normal manner did CUC file

---

[1]  Mr. O'Brien's declaration is included as Attachment A.
[2]  The parties properly utilize email with the Court for non-substantive issues such as coordinating scheduling.

*US' RESPONSE TO CUC'S MOTION TO CONSTRUE AND CLARIFY ORDER*
*United States v CUC, et al. 08-CV-0051*
*- 1 -*

the instant request – now deemed an emergency[3] by CUC.[4]  *Id.*

CUC's Motion is conflicting as it requests the Court to find that the United States Environmental Protection Agency ("EPA") does not have the authority to direct which SO2 projects will be implemented by the EEMC.  An accompanying declaration signed by CUC legal counsel James Sirok ("Sirok Dec.") seeks to hold the EEMC responsible for "all aspects of Stipulated Order No. 2," but also concedes that CUC is required to fund and implement SO2 projects such as those responsibilities given to the Technical Manager for Oil ("TMO")."[5]  The United States agrees that CUC is required to sustain and staff the TMO position and fund a budget for TMO related work, so that question is not in dispute.  Mr. Sirok's apparently mistaken remark that the EEMC is essentially CUC for "all" SO2 purposes is not supportable as the EEMC is not a party to SO2, and CUC is bound under SO2's terms as re-affirmed by the EEMC Order that states, "This [EEMC] Order does not modify, preclude, or impact any SO2 requirements." EEMC Order

_____

[3] There is no reason that CUC could not have timely raised these issues after entry of the EEMC Order.  Curiously, in light of the numerous status conferences and conversations involving the parties that included weekends and late nights, CUC seems to place CUC's failure to timely notify the Court on the United States not being suitably available for conference calls.  Sirok Dec. ¶¶ 3, 5, 8.  However, EPA counsel responded in writing to these issues on October 23, 2014 PST, and additional discussions took place promptly thereafter. O'Brien Dec. ¶ 4. Sirok Dec. ¶¶ 3, 5.  Further, after returning to the office Mr. O'Brien contacted Mr. Sirok on November 5, 2014 PST, seeking to "set-up a time to discuss your concerns," but Mr. Sirok did not respond to the email, and ultimately contacted Mr. O'Brien on November 25, 2014, after the completion of Mr. Sirok's two week work leave. O'Brien Dec. ¶ 4; Sirok Dec. ¶ 8.  The parties subsequently spoke after the Thanksgiving holiday.  *Id.* ¶ 9.

[4]  The EEMC Order provides that the United States may seek emergency relief before the Court, CUC is not afforded the opportunity under the EEMC Order. EEMC Order ¶ B3.

[5]   Sirok Dec. ¶ 4, Dkt No. 163; CUC Motion ¶ B1.

*US' RESPONSE TO CUC'S MOTION TO CONSTRUE AND CLARIFY ORDER*
*United States v CUC, et al. 08-CV-0051*

- 2 -

¶ B2.  Therefore, the United States' response will focus on CUC's argument regarding EPA's authority to direct whether the EEMC, CUC, or EPA can implement the thirteen SO2 projects described by CUC.  *See*, CUC Motion ¶ B1. (Issue raised by this Motion and Question Presented for Clarification).

CUC's position that EPA does not have the authority to direct whether the EEMC, CUC, or EPA will implement SO2 projects is incorrect.  CUC's self-described "thirteen SO2 projects" are not part of the EEMC Order but are among the projects required under SO2, which the EEMC Order expressly did not modify, preclude, or impact.  EEMC Order ¶ B2.

The EEMC Order provides EPA general authority to prioritize projects, select the entity to implement the project, and oversee the work: 1)  Subject to EPA prioritizing SO2 projects, after consultation with CUC, the EEMC shall implement SO2 as described in Section D of the EEMC Order; 2)  depending upon which entity is performing the work, the EEMC and CUC must comply with all SO2 requirements; 3)  EPA retains the authority to perform work that would be otherwise performed by the EEMC; and 4)  the EEMC may implement projects only with EPA approval.  *Id*. ¶¶ B1, B2, B6, D1.(f).

In light of CUC's longstanding inability to accomplish SO2 requirements, EPA anticipates that the EEMC will have a significant role in implementing SO2 projects.  The EEMC's role will be shaped as the process unfolds; funding is made available by CNMI; better defined cost estimates are generated; financing needs are clarified, and projects are completed by the EEMC, CUC, or EPA as directed by EPA.  Declaration of Michelle Rogow ("Rogow Dec.")[6] ¶ 10.  However, the EEMC does not step into CUC's shoes, nor does the EEMC Order allow CUC to walk away from its SO2 and EEMC Order obligations.

---

[6]  Ms. Rogow's declaration is included as Attachment B.

*US' RESPONSE TO CUC'S MOTION TO CONSTRUE AND CLARIFY ORDER*
*United States v CUC, et al. 08-CV-0051*
*- 3 -*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.  DISCUSSION

**A.    The EEMC Order**

On September 26, 2014, the Court entered the EEMC Order thereby resolving the United States' motion brought against CUC and CNMI seeking a receiver and other relief.  (Dkt Nos. 15, 141, 151).  The EEMC Order provides, in part, that an EEMC be retained under the Court's jurisdiction to help achieve expeditious compliance with SO2 requirements.  EEMC Order ¶ A2.

### 1.    EEMC Authority

The EEMC Order resulted from CUC's systemic inability to complete SO2 requirements and provides the EEMC authority to complete projects selected and approved by EPA.  *Id.* ¶¶ B1, B2, B6, D1.(f).  The EEMC is not subject to CUC's and CNMI's financial, procedural, and contractual roadblocks that plagued CUC thereby allowing the EEMC to implement projects in a timely and cost efficient manner subject to the Court's and EPA's approvals.  *Id.  Passim.*

### 2.    Funding Obligations

Beginning no later than December 31, 2014, and ending no later than February 1, 2018, CNMI is required to make scheduled payments or file a Notice with the Court of the Department of the Interior's ("DOI") Authorization to Proceed confirming DOI's authorization to use grant monies for specified SO2 projects.  *Id.* ¶ D1.(a), (b).  CNMI's funding obligation totals $22.8M.  *Id.*  CNMI is also required by December 26, 2014, to provide a financial guarantee approved by the United States for this funding.  *Id.*  These payments are limiting factors on the scope of the work that the EEMC can accomplish, and there may be project specific DOI restrictions on the grant monies made available to the EEMC. Rogow Dec. ¶¶ 10, 12-16, 28-29.

In addition to the $22.8 million being provided by CNMI pursuant to Section D of the EEMC Order, CUC memorialized in Section D1.(d) of the EEMC Order that $2.271M in grant funding is still available for SO2 projects.  CUC

agreed that this funding would be used by CUC to complete SO2 projects or be reprogrammed for EEMC use.  EEMC Order ¶ D1.(d); Rogow Dec. ¶ 29, Ex. 1, at 4-5. This provision in the EEMC Order is further evidence of CUC's continuing obligations under SO2 and to conduct SO2 related work.  Rogow Dec. ¶ 29.

### 3.    Potential EEMC Projects

As the regulatory environmental agency, the EEMC Order provides EPA a substantial role in selecting the projects that will be implemented by the EEMC and overseeing how the work is implemented.  *Id.* ¶ 11.  Because CUC's Motion asserts that the EEMC is solely responsible for implementing CUC's "thirteen SO2 projects," the United States respectfully refers the Court to the following EEMC provisions that describe that EPA will direct whether SO2 projects are conducted by the EEMC, CUC, or EPA:[7]

> Subject to EPA prioritizing SO2 projects, after consultation between EPA and CUC, the EEMC shall implement SO2 and be funded as described in Section D ("Remuneration").  EEMC Order ¶ B1.
>
> Depending on which entity is performing the work, the EEMC and CUC must comply with all SO2 requirements, including but not limited to all notification and submission requirements and obtaining EPA approvals.  *Id.* ¶ B2.
>
> To the extent EPA determines it is appropriate for EPA to perform work that would otherwise be performed by the EEMC, EPA will consult with the EEMC and CUC relating to the extent to which EPA will conduct such activities and the funding for such work.  *Id.* ¶ B6.
>
> EPA and CUC shall consult regarding the EEMC's scope of work and cost estimate.  Upon receipt of EPA approval, the EEMC may implement the project consistent with SO2 and this [EEMC] Order.  *Id.* ¶ D1.(f).

---

[7]  EPA is currently performing cleanup work at Power Plants 1 & 2, and the Rota Power Plant and may need to remain the lead on that work until EEMC funding is available.  Rogow Dec. ¶¶ 17-18; Rogow Primary Declaration, Dkt No. 144; Michelle Rogow Supplemental Declaration, Dkt No. 145.

*US' RESPONSE TO CUC'S MOTION TO CONSTRUE AND CLARIFY ORDER*
*United States v CUC, et al. 08-CV-0051*

- 5 -

The EEMC Order imposes funding requirements upon CNMI; however, flexible project implementation is necessary to address priorities and available funding.  Rogow Dec. ¶¶ 12-16, 28-29.  As CNMI funding under the EEMC Order is limited in amount, under a defined schedule, subject to potential grant restrictions, and will not fully fund SO2 projects, the EEMC Order allows for a process that authorizes EPA to determine the schedule and which projects will be implemented by the EEMC.  EEMC Order ¶¶ B1, B2, B6, D1(f); Rogow Dec. ¶¶ 12-16, 28-29.

For initial planning purposes, EPA and CUC created a list of projects from which EPA will identify top priorities and assign those projects to the EEMC or to CUC (or retained by EPA), depending upon available funding.  *Id*. ¶ 13.  This initial list of thirteen SO2 projects is not part of the EEMC Order but utilized by CUC for purposes of its motion.  However, in no manner is EPA limited by the thirteen SO2 project list in prioritizing and assigning projects, nor does it limit CUC's obligations regarding SO2.  *Id.* ¶¶ 13-16, 28-29; EEMC Order ¶ B2; SO2 *Passim.*  The reasons for providing EPA flexibility in determining which projects will be implemented by the EEMC are not exceptional or unusual.

First, although EPA and CUC attempted to forecast future costs for the thirteen SO2 projects, the actual project costs are subject to uncertainty.  Rogow Dec. ¶ 14.  For example, currently listed projects include the CUC pipeline and facility drainage at each of the power plants.  However, since no EEMC or subcontractor contracts are in place, the actual project costs are not known.  The CUC pipeline is a high priority and the estimated cost of completing this project is substantial and will impact how much other work can be accomplished with the available funding - including the remaining "twelve SO2 projects."  With respect to the facility drainage, an engineering assessment has not been undertaken so the

final design is yet to be determined and the actual cost of the project could be subject to substantial change.  If, for example, the power plant facility drainages project exceeds current cost estimates, EPA might direct the EEMC to implement other projects with available funding.  Also, other work may arise that may not be included in the thirteen SO2 projects such as newly identified critical SO2 needs like an oil spill or waste management projects that EPA determines should be implemented by the EEMC.  EPA is not limited to CUC's list of thirteen SO2 projects in deciding which SO2 projects should be assigned to the EEMC.  *Id.*

Second, the scope of the work that EPA can actually assign to the EEMC is subject to grant and other funding and the funding schedule.  EEMC Order ¶ D1.(a)-(d).; Rogow Dec. ¶ 15.  Currently, CNMI is only required to deposit $5M into the Court Registry by December 31, 2014.  This first payment and subsequent payments limit the amount of work that the EEMC can conduct.  With regard to the grant-based funding, there may be restrictions imposed by DOI on the use of the funding.  Similarly, since CNMI is required to fund the Court Registry or provide notice of funding over a four year period, EPA retained project flexibility to ensure that the assigned EEMC projects mesh with the CNMI funding availability to ensure that the most important projects are addressed first.  If CNMI does not meet its EEMC Order funding obligations, it would also impact the nature of the projects performed by the EEMC.  Rogow Dec. ¶¶ 12-16, 28-29.

Third, if the cost of CUC's thirteen SO2 projects exceeds the CNMI EEMC Order funding requirements, the EEMC would not be tasked by EPA to complete these projects.  *Id.* ¶ 16.  The Court may recall that CUC requested that EPA retain the option of selecting CUC to conduct SO2 projects as CUC expressed concern that the EEMC would unnecessarily spend these funds, thereby leaving CUC with ultimate responsibility for completing all SO2 obligations.  *Id.*; SO2 *Passim*; EEMC Order ¶ B2.

*US' RESPONSE TO CUC'S MOTION TO CONSTRUE AND CLARIFY ORDER*
*United States v CUC, et al. 08-CV-0051*
- 7 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

For these reasons, the Court should reject CUC's construct that the EEMC Order requires the EEMC to implement CUC's thirteen SO2 projects – these projects and CUC's asserted limitation *simply do not exist in the EEMC Order*. EEMC Order *Passim; United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) (The instrument must be construed as it is written); accord, *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996).

4.    Tank 102

As described above, there is no basis for CUC's argument that the EEMC is solely required to implement CUC's thirteen SO2 projects.  As CUC's Motion focuses on Tank 102, the United States must point out that CUC is not being accurate regarding Tank 102.

CUC argues that Tank 102 is required to be implemented by the EEMC using CNMI funding and in support of that argument provides an apparent excerpt from a spreadsheet describing potential project costs.  *See,* Declaration of Andrew Longworth ¶ 6, Dkt No. 164.  CUC utilizes the spreadsheet excerpt as a foundation for its motion and argues that the funding totals confirm that CUC never intended to implement Tank 102 and that this responsibility falls upon the EEMC.  *Id.*

However, CUC fails to inform the Court that on September 28, 2014 (two days after the Court entered the EEMC Order), CUC provided EPA with a project prioritization and cost estimate spreadsheet that admits that the Tank 102 project is "CUC SCOPE - NOT EEMC."  Rogow Dec. ¶ 25; Ex. 1, at 6 (*see,* column "Facility" at row "PP1/2" at line "Tank 102" in the "Notes" section on the last page of the spreadsheet).  This admission - that CUC failed to provide the Court - is sufficient reason to deny CUC's request.

CUC's obligation to construct Tank 102 comports with representations it previously made to the Court.  The Court may recall that CUC is under contract with Tano Group, an approved EPA contractor for this work, to construct Tank 102

and that sufficient grant and CUC funding is earmarked for the project; therefore, there was no reason to delay completing this important project until the EEMC is selected. *Id*. ¶¶ 19-20.  The parties also advised the Court that in light of CUC's expected Tank 102 progress, an appropriate date for a CNMI-based status conference would be the end of February, 2015. *Id*. ¶ 20.

Further, based on CUC's obligation to construct Tank 102, the United States agreed to accept the $5M Court Registry payment due on December 31, 2014, and the $2.8M payment due by February 1, 2015 - as this amount should be sufficient for the pipeline, the first year EEMC management costs, and to begin planning for other second year capital projects.  However, this amount is not sufficient and was not intended to address the Tank 102 construction because CUC agreed to fund (without using EEMC funds / CNMI funding required under Section D of the EEMC Order) and fully implement the Tank 102 construction. *Id*. ¶ 23.

The upcoming January 4, 2015, resignation of CUC's TMO heightened EPA's concern regarding CUC's ability to manage the Tank 102 construction and other SO2 work.  With that in mind, EPA and CUC recently discussed whether the Tank 102 construction should be placed with the EEMC. *Id*. ¶ 26.  However, these discussions broke down as CUC insisted that the EEMC cannot utilize approximately $1.15M in non-grant funding and $350,000 in grant funding (approximately $1.5M that is not part of the EEMC fund) already earmarked for Tank 102 construction, but that those funds should flow to CUC to use as CUC wishes.  EPA is open to discussing whether to reverse the agreed upon course and task the EEMC with the Tank 102 construction but only if the $1.5M in earmarked Tank 102 funds are used to fund the EEMC for the Tank 102 project. *Id*. ¶ 26.

     5.   CUC Contracts

CUC asserts a legally unsupportable position that the EEMC is bound by

*US' RESPONSE TO CUC'S MOTION TO CONSTRUE AND CLARIFY ORDER*
*United States v CUC, et al. 08-CV-0051*
- 9 -

1  and must manage CUC's existing SO2 contracts even though: 1) the EEMC is not
2  a party and had no involvement in negotiating or implementing CUC's contracts;
3  2) the EEMC may not be able or want to be bound by the terms and conditions of
4  CUC's contracts; 3) CUC's contracts may conflict with the EEMC Order and the
5  future EEMC agreement, including its specified rates and payment terms; 4) the
6  EEMC may have in house personnel or contractors to conduct the work; and 5)
7  CUC's contractors may have no interest in working with the EEMC.  *Id*. ¶ 27.

8         The United States does not dispute that the EEMC has the authority to
9  assume CUC's contracts if the EEMC and the contractors agree.  However, this is
10  the EEMC's and the contractor's decision and cannot be mandated by the EEMC
11  Order or directed by CUC.  EEMC Order ¶ B5.(a).  Basic contract law rejects
12  CUC's attempt to unilaterally impose CUC contracts on an unwilling party that did
13  not enter into the contracts.  *See, e.g.*, *Barnes v. Yahoo!*, 570 F.2d 1096, 1108 (9th
14  Cir. 2009) (the formation of a contract requires a meeting of the minds of the
15  parties that is measured by the objective manifestations of intent on both sides to
16  bind themselves to an agreement).

17         It appears that CUC is attempting to leverage the EEMC Order to resolve
18  CUC's numerous contracting issues relating to its failures to implement SO2
19  projects.  For example, it did not take CUC long to seek to utilize the EEMC Order
20  to attempt to resolve the CUC / Smithbridge of Guam ("Smithbridge") contracting
21  dispute.  Within two hours of the Court signing the EEMC Order and before the
22  parties exited the courthouse, CUC requested EPA to endorse the transfer of the
23  Smithbridge pipeline construction contract to the EEMC notwithstanding the
24  Court's and EPA's substantial concerns with Smithbridge's poor work relating to

pipeline.[8]  Rogow Dec. ¶ 24.  Before leaving the courthouse, the United States'
rejected CUC's Smithbridge proposal.[9]  *Id*. ¶ 24; O'Brien Dec. ¶ 7.

CUC's Motion seeks to place CUC's longstanding contract disputes
involving numerous parties on the EEMC's shoulders without the consent of the
EEMC or the contractors.  The impact of CUC's position is not supportable and
would result in imposing CUC's contracts upon the Court, the Court's relationship
with the EEMC, and undermining available funding.  CUC's request should be
denied.

### III.      CONCLUSION

For the reasons stated above, CUC's Motion should be denied.

Respectfully submitted,

Dated: <u>December 12, 2014</u>

By: <u>/s/ Bradley R. O'Brien      </u>
BRADLEY R. O'BRIEN
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice

Of Counsel:

Janet A. Magnuson
Assistant Regional Counsel
United States Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105

---

[8]  Notwithstanding substantial concerns raised by the Court, CUC, EPA, and
others, CUC alternatively sought approval for continuing to utilize Smithbridge for
the pipeline construction. Rogow Dec. ¶ 24.
[9]  In an October 3, 2014 letter, the United States formally requested CUC and its
Board of Directors to inform the United States in writing whether, contrary to
previous commitments, CUC continued to consider Smithbridge as a viable
pipeline construction company.  Neither CUC nor its Board of Directors
responded.  O'Brien Dec. ¶ 8.

*US' RESPONSE TO CUC'S MOTION TO CONSTRUE AND CLARIFY ORDER*
*United States v CUC, et al. 08-CV-0051*
- 11 -